*Underwood* for plaintiff; *Letcher & Tilford* for defendants.

THOMAS
*vs*
DAVIS.

A Sheriff who takes a delivery bond, is a competent witness for the plaintiff in a suit on such bond.

---

# Thomas *vs* Davis.

ASSUMPSIT.

APPEAL FROM THE FAYETTE CIRCUIT.

Case 58.

*Practice in suits at law. Notice. Depositions. Evidence.*

JUDGE BRECK delivered the opinion of the Court.

October 30.

DAVIS recovered a judgment in an action of assumpsit, the law and facts upon a plea of non-assumpsit having been submitted to the Judge, against Thomas, for two hundred and fifty dollars, and Thomas has appealed to this Court.

Decree of the Circuit Court.

Before we examine the questions involved in the merits of the controversy, we will dispose of some objections to the action of the Court in regard to the admission and rejection of testimony during the progress of the trial.

Exceptions were taken by the defendant to the deposition of Pryor:

1st. That the order for taking it was unauthorized; it not appearing that any affidavit had been filed by the plaintiff, as required by the statute.

Objections to the testimony in the Circuit Court.

2d. That the notice was insufficient.

In answer to the first objection, it need only be remarked, that an order for taking the deposition was granted on motion of the plaintiff, and the presumption is authorized

It is not necessary that a written affidavit should be filed to authorize the Court.

THOMAS
vs
DAVIS.

to grant an order to take depositions *secus*, where the application is made to the clerk for a *dedimus* to take a deposition. (7 *Monroe*, 576.)

that it was granted upon the proper affidavit as to the materiality of the witness. It was not necessary that the affidavit should be in writing. The statute requires an affidavit to be filed with the Clerk to authorize him to issue a commission in vacation, when no order of Court has been obtained. Such, we presume, was the case in *Taylor* vs *Bank of Illinois*, (7 *Monroe*, 576,) to which we have been referred.

As to the second objection, we think it is equally untenable.

A notice given at Lexington, Ky., in reasonable time to take a deposition at Natchez, Miss., on the 15th, 16th, 17th or 18th, and taken on the last named day, was held well taken. (2 *J. J. Mar.* 55.)

The notice was to take the deposition "at the office of Lewis Sanders, in the city of Natchez, on the 15th day of January, 1845, and if not on that day, on the 16th, and if not on that day on the 17th, and if not on that day on the 18th of the same month." The deposition was taken on the day last named. In view of the distance between the place where the suit was pending and where the deposition was to be taken, the notice running through four days, was not unreasonable: (2 *J. J. Marshall*, 55.) There is no evidence, and we cannot presume that the notice was thus given for the purpose of annoyance or of seeking any undue advantage, but to guard against the failure of the witness, from some casualty, to attend on the first day named.

A party who has procured the rejection of a deposition filed by his adversary, should not be permitted afterwards to read it upon the trial. The plaintiff stated that he should object to its being read by the defendant; that it had been filed by mistake, and asked leave to withdraw it, which the Court refused. All this transpired before the jury were sworn.

Under these circumstances, the Court properly refused the defendant permission to read the deposition upon the trial. And we may here also remark, that the alledged surprise on the part of the defendant's counsel at this refusal, constituted no sufficient ground for setting aside the order of hearing, or for granting a new trial. As an additional reason why the refusal was no ground for a new

trial, it appears that the plaintiff's counsel offered to con-                    THOMAS
sent to its being read, if he was permitted to amend his                    *vs*
declaration.   The deposition of Jones purported to have                    DAVIS.
been taken in Mississippi, but without any order of Court
or notice.

The testimony as detailed in the bill of exceptions, is
that in the month of November, 1843, he was upon the
Pharsalia Race Course, in the State of Mississippi, and
heard the plaintiff tell the defendant that if he would take
a negro boy the defendant had to New Orleans at the ap-
proaching races, and bet him on Lucy Dashwood the day
she ran, the plaintiff would go his halves, and pay the de-
fendant two  hundred and fifty dollars if he lost said ne-
gro on said race ; that afterwards, in  December, 1843,
at the Meterie Race Course near New Orleans, on the day
of the race when Lucy Dashwood ran, the defendant call-
ed on deponent a few moments before the race, and told
him that he had bet the negro boy on the race; that de-
ponent at same time asked the defendant if he consider-
ed Davis in, and he replied he did ; that Lucy Dashwood
ran and won the race.

The plaintiff also introduced George W. Stone as a
witness, who testified that the defendant told him that he
was willing to settle with the plaintiff and give him his note
for $250 ; that he stated at the same time, he did not con-
sider he owed the plaintiff any thing, but would give his
note for $250.   Defendant also stated that he did bet a
negro boy on a horse race, in which Lucy Dashwood ran
in New Orleans, and won $500 on the race, and lost it
again.   The defendant, afterwards in another conversa-
tion, told witness that he did not bet said negro boy on
said race.   The witness was afterwards called by defend-
ant, and proved that the plaintiff resided in Mississippi,
and the defendant in Kentucky.

The plaintiff then read from a printed book, purport-
ing, from its title page, to contain the civil code of the
State of Louisiana, and to have been published by au-
thority, the following article :

"ART. 2952. The law grants no action for the pay-
ment of what has been won at gaming or by a bet, ex-

cept for games tending to promote skill in the use of arms, such as the exercise of the gun, foot, horse and chariot racing. And as to such games, the Judge may reject the demand when the sum appears to him excessive.":

To this evidence in regard to the law of Louisiana, the defendant objected, but the objection was overruled. Under the construction given by this Court, in *Taylor* vs *Bank of Illinois, supra*, and in *Breckinridge* vs *Moore, &c.*, (3 *B. Monroe*, 636,) to our statute of 1809, (1 *Stat. Laws*, 187,) the book from which the article was read, was competent testimony of the laws of Louisiana, and the objection, therefore, was properly overruled.

Printed books purporting to be published by authority, and to contain the laws of sister States, are competent evidence to prove those laws. (7 *Monroe*, 576; 3 *B. Monroe*, 363.)

This was all the evidence adduced by either party upon the trial, and in view of it we think the assumption is authorized, that the defendant did bet his negro boy upon Lucy Dashwood at the race run by her at New Orleans in December, 1843, and thereby won $500. And of the sum thus won, that the plaintiff was entitled to a moiety.

From the defendant's statement to the witness, that he considered the plaintiff in the bet with him, we think it fairly to be inferred that he had reference to the arrangement between them shortly before in Mississippi. It is true the witness does not prove from what he states passed between the parties in Mississippi, that the contract was then closed. But from the fact that the defendant was at the race and making the bet as proposed; from his reply to the witness when asked whether he considered the plaintiff in the bet; and from his subsequent statements, it seems to us the inference is fully authorized, that the bet was made in accordance with a settled previous agreement between the parties. Whether the agreement was finally concluded at the time the witness states the terms were proposed by the plaintiff or afterwards, is not important. It is sufficient that it may be inferred from the testimony and the circumstances, that the bet was made by the defendant, and that he considered the plaintiff in with him, pursuant to an agreement between them.

If the contract was actually closed in the State of Mis-
sissippi, we have no evidence that it was forbidden by the
laws of that State. Such a contract, if it had even been
a bet between the parties, was not prohibited by the com-
mon law, which may be presumed, in the absence of proof
of any statutory provision, to be the law of that State in
regard to it.

But if the contract was made in Mississippi, but to be
performed in Louisiana, it would be governed as to its va-
lidity, obligation and interpretation by the laws of Loui-
siana, the place of performance. (*Story's Con. Laws*, 233.)

The contract as to the bet upon the race, was perform-
ed in Louisiana. The act, as we have seen, was not for-
bidden, but expressly authorized by the laws of that State.
It results, therefore, that the defendant by an operation
tolerated by the laws of Louisiana, won for himself and
the plaintiff, five hundred dollars. The question then
arises, and it is the only remaining question for consid-
eration, whether the judicial tribunals in Kentucky should
lend their aid to the plaintiff for the recovery of his moie-
ty of this fund from the defendant?

It is strenuously contended, that as betting on horse
racing is prohibited by our laws, that our Courts of Jus-
tice should, on that ground, refuse the relief sought.
That they are not bound by the law or comity of nations,
to enforce a contract which is against the policy of our
own laws.

This as a general proposition, is undoubtedly true;
but the principle, we think, is not applicable to this case.
The plaintiff is not here seeking to recover $250, which
he has won from the defendant. He has won nothing
from him—made no bet with him. He merely seeks to
recover $250 which the defendant has in fact received
for his use and benefit. The transaction by which this
money was acquired and came into the hands of the de-
fendant, was in violation of no law of Mississippi nor of
Louisiana. In view of the laws of those States, it was
legally acquired and received by the defendant for the use
of the plaintiff. His right to it was absolute and per-
fect, and to afford him the aid of the laws and tribunals
of Kentucky for its recovery, we cannot regard, as con-

THOMAS
*vs*
DAVIS.

A contract valid
by the laws of
Louisiana, where
it was to be per-
formed, and by
the common law,
will be enforced
in Kentucky.

Two individuals
jointly bet on a
horse race in
Mississippi and
win $500, one
received the mo-
ney and refused
to pay, held that
the amount was
recoverable by
action of as-
sumpsit in Ken-
tucky. It was not
money won, but
received for the
plaintiff's use.

MURPHEY'S H'RS
*vs*
MURPHEY.

tended, as in violation of any principle of public policy, or as a judicial sanction of any act denounced as an offence by the laws of Kentucky.

Upon the whole, we perceive no sufficient reason for disturbing the judgment of the Court below, and it is, therefore, affirmed.

*Robertson* for appellant; *Pindell* for appellee.