## Illinois Central Railroad Company v. Tanner, et al.

(Decided November 30, 1920.)

### Appeal from Ballard Circuit Court.

1. Carriers—Delay in Shipment of Livestock—Finding of Jury.— Sufficiency of Evidence.—In an action for damages due to delay in shipment of livestock, evidence examined and the finding of the jury that there was an unreasonable delay held flagrantly against the evidence.

2. Carriers—Delay in Shipment of Livestock—Evidence—Trial— Instructions.—Where, in an action for damages for delay in the transportation of livestock, the evidence showed that under no circumstances could the stock have been transported in time for sale on the 13th, but did show that a portion of the stock was delivered in time for sale on the 14th, and another portion too late for sale on that day, plaintiffs were not entitled to recover damages for any decline in the market between the 13th and 14th, but the evidence and the right of recovery should have been confined to the decline in the market from the 14th to the 15th, and to the cattle which arrived on the 14th too late for sale on that day.

3. Depositions—Notice—Sufficiency—Motion to Suppress.—A notice that "the defendant is hereby notified that the plaintiffs will on the 26th day of December, 1918, if not on the 26th day, then on the 27th day of December, 1918, if not on the 27th day, then on the 28th day of December, 1918, attend at the following places, to-wit: At the office of J. S. J. C. Co., National Stock Yards, East St. Louis, Ill., and take the depositions of J. S. J., L. B., H. J. M. and F. B., and at the office of S. L. C. Co., National Stock Yards, East St. Louis, Ill., and take the depositions of C. S. and C H., and at the office of S. & V. L. C. Co., National Stock Yards, East St. Louis, Ill., and take the depositions of W. S. and C. H.; the taking of said depositions will not be at the time but in rotation at one place after the other and each and all of said depositions are to be read in evidence on the trial of the above styled action," is not sufficient and a motion to suppress the deposition should have been sustained.

JOHN E. KANE, TRABUE, DOOLAN, HELM & HELM and W. S. HORTON for appellant.

J. B. WICKLIFFE for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

Plaintiffs, R. H. Tanner and W. F. Short, sued the Illinois Central Railroad Company to recover damages for unreasonable delay in the transportation of one carload of hogs and three carloads of cattle, from Barlow, Ky., to the National Stock Yards, East St. Louis, Illinois. The damages were itemized as follows: $242.57 for shrinkage of 1,565 pounds in the weight of the hogs; $160.00 for deterioration in the quality of the hogs; $44.26 because of the decline in the market from the 13th of December to the 14th of December; $340.00 for shrinkage of 4,250 pounds in the weight of the cattle, $660.50 for deterioration in the quality of the cattle, and $141.62 for the decline in the market from the 13th of December to the 14th of December, thus making the damages claimed on account of the hogs, $440.01, and the damages claimed on account of the cattle, $1,142.12, or a total of $1,582.13. The jury returned a verdict in favor of plaintiffs for $500.00, and the railroad company appeals.

The hogs and cattle were delivered at Barlow on the evening of December 12, 1917. Three of the cars were loaded before midnight, and one after midnight. According to plaintiffs, the stock left Barlow about one o'clock, but according to defendant, the train left at 3.45 a. m.,

December 13th. It was accompanied by plaintiffs to
Carbondale, Illinois, where they left the train and took a
passenger train to St. Louis. Plaintiffs claim that they
saw the stock at the depot at East St. Louis when they
arrived there on the passenger train. According to the
defendant's records, the stock reached that point about
6:20 p. m. Plaintiffs also say that the stock was not de-
livered at the stock yards until the 14th, and that one car-
load of cattle arrived there too late for sale that day and
was sold the next day. On the other hand, the foreman
of the switch engine who delivered the stock to the Na-
tional Stock Yards testified that he received the cars at
8:20 p. m., and delivered them to the National Stock
Yards at 9:20 p. m., and confirmed this statement by the
introduction of the records which he kept. When he
reached there, he turned over the way bills to the yard
clerk. That was the end of his duty, and it then became
the duty of the stock yards to place the cars at the un-
loading chutes with their own engines. There was
further testimony as to the loss of weight and deteriora-
tion in quality of both the hogs and the cattle, as well
as testimony to the effect that there was a decline in the
market from the 13th to the 14th, and from to the 14th
to the 15th, of from 25c to 40c a hundred.

It was not shown that there was any train on which
the stock could have been shipped other than the one on
which they left Barlow, and it clearly appears from all
the testimony that there was no delay in delivering the
stock to the new yards at East St. Louis. According to
the testimony for plaintiffs, the usual time for making
the trip from Barlow to the National Stock Yards was
about twenty hours, so that if the stock reached there
about 9:20 p. m., there was no unreasonable delay when
it is considered that the uncontradicted evidence shows
that the weather was very cold, and there was heavy
snow on the ground which impeded the movement of
trains about fifty per cent, and this is true whether the
stock left Barlow at one o'clock a. m., as claimed by
plaintiffs, or 3:45 a. m., as claimed by defendant. If,
however, the stock was not delivered until the next day,
then there was an unreasonable delay. While plaintiffs
say that such was the case, they do not show that they
were present when the stock was delivered, or had any
actual knowledge on the subject. On the other hand, the
foreman of the engine who delivered the cars says, and
his records bear him out, that he delivered the stock at

the National Stock Yards at 9:20 p. m., that his work was then completed, and it then became the duty of the National Stock Yards to place the cars at the unloading chutes with their own engines. In view of this positive evidence, and of the unsatisfactory evidence to the contrary, we conclude that the finding of the jury that there was an unreasonable delay in transporting and delivering the stock was flagrantly against the evidence.

As before stated, there was evidence of a decline in the market for hogs and cattle from the 13th to the 14th, and the instructions authorized a finding of damages on that account. Under no circumstances could the stock have been carried to the National Stock Yards in time for sale on the 13th. That being true, plaintiffs were not entitled to recover damages for any decline in the market between the 13th and the 14th. The only damages which they could recover on this account were for the cattle, which, it is claimed, were not delivered in time to be sold on the 14th, but had to be sold on the 15th. Therefore, the evidence and the right of recovery should have been confined to the decline in the market from the 14th to the 15th.

The next question to be determined is whether the notice to take certain depositions was sufficient. The notice is as follows:

"R. H. Tanner and W. F. Short, . . . . Plaintiffs,

vs.                          Notice.

Illinois Central Railroad Company,    . . Defendant.

"The defendant, Illinois Central Railroad Company, is hereby notified that the plaintiffs, R. H. Tanner and W. F. Short, will, on the 26th day of December, 1918, if not on the 26th day, then on the 27th day of December, 1918, if not on the 27th day, then on the 28th day of December, 1918, attend at the following places, to-wit: at the office of Joseph S. Jackson Commission Company, National Stock Yards, East St. Louis, Illinois, and take the depositions of J. S. Jackson, Lee Brown, H. J. Murphy and Fred Barries and at the office of Shippers Livestock Commission Company, National Stock Yards, East St. Louis, Illinois, and take the depositions of Cal Sitton and Cris Hinnott and at the office of Sammons & Veach Livestock Commission Company, National Stock Yards, East St. Louis, Illinois, and take the depositions of Walter Sammons and Cris Hinnott. The taking of

said depositions will not be at the time but in rotation at one place after the other and each and all of said depositions are to be read in evidence on the trial of the above styled action.

"This December 2nd, 1918."

Under this notice the deposition of Cal Sitton was taken at the Shippers Livestock Commission Company's office on December 26, 1918, and defendant's attorney was present. On December 27, 1918, the deposition of Lee Brown was taken at the Joseph S. Jackson Commission Company's office. On December 28, 1918, the deposition of F. G. Barries was taken at the Joseph S. Jackson Commission Company's office, and on the same day the deposition of Walter Sammons was taken at the office of Sammons & Veach Commission Company. Defendant was not present by agent or attorney at the taking of the last three named depositions. Defendant's motion to suppress the depositions of Lee Brown, F. G. Barries, and Walter Sammons was overruled as to Brown and Barries, but sustained as to Sammons.

Section 566, Civil Code, is as follows:

"The notice must be in writing, signed by the party giving it, or his attorney; it must be addressed to the party on whom it is to be served, and must specify the time and place of taking the depositions."

In the case of Thomas v. Davis, 7 B. Mon. 227, which was decided prior to the adoption of the Code a notice was given at Lexington, Ky., to take the deposition of a witness "at the office of Lewis Sanders in the city of Natchez on the 15th day of January, 1845, and if not on that day on the 16th, and if not on that day on the 17th, and if not on that day on the 18th of the same month." The court held the notice sufficient in view of the distance between the place where the suit was pending, and the place where the deposition was to be taken. There is a material difference between the notice in that case and the notice under consideration. There, only one witness was mentioned, and only one place was designated, so that whether the deposition was taken on the first or the last day mentioned, it was to be taken at a particular place, but the notice in question provides for the taking of depositions of several witnesses at different places on uncertain days. It was not even sufficient to apprise the defendant where to be on any one of several days. It is clear, therefore, that the notice does not specify the time and place with reasonable certainty. We therefore con-

clude that all the depositions at the taking of which the defendant was not present by agent or attorney should have been suppressed.

Judgment reversed and cause remanded for a new trial consistent with this opinion.